UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| HERBERT TAYLOR, | ) | CASE NO. 4:05 CV 851 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| MOHAMED AZAM, et al., | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

On March 31, 2005, plaintiff pro se Herbert Taylor filed this Bivens[1] action against Elkton Federal Correctional Institution ("FCI Elkton") Health Services Administrator Mohamed Azam, Clinical Director John Mannenti, "MPN Medical" Robert E. Williams, Physician's Assistant Shirley Deeds, Physician's Assistant Janet Buntz, Physician's Assistant Gary Bullock, Physician's Assistant Moheb Sidhom, Health Information Technologist Melissa Molnar, HB Unit Counselor Robert Chapman, HB Unit Case Manager Ms. Winters-Gates, HB Unit Manager Eva Porter, AA Unit Counselor Mr. Byerly, AA Unit Manager Mary Burns, Case Manager Coordinator Cathy Milton, Lieutenant C. Hoaglin,

---

[1] Bivens v. Six Unknown Agents, 403 U.S. 383 (1971). While plaintiff cites 42 U.S.C. § 1983, that section is clearly inapplicable, as there is no allegation of action under color of state law.

Administrative Remedy Coordinator Ms. Fusco, former Warden Mark Bezy, Inmate Systems Manager Ms. Dixon, Former Superintendent of Industries and Education Sam Pratt, Former Associate Warden Mr. Montovo, Bureau of Prisons ("B.O.P.") Regional Administrative Remedy Coordinator Mr. Sadowski, former B.O.P. Regional Director M.E. Ray, B.O.P. Regional Director D. Scott Dordrill, B.O.P. General Counsel Herrell Watts, and B.O.P. Director Mr. Lappin. In the complaint, plaintiff alleges that the defendants have been deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. He seeks removal of three disciplinary convictions from his prison record, reduction of his security level to "minimum/community custody, transfer from FCI Elkton," and $5,000,000.00 in damages.

*Background*

Mr. Taylor "self-surrendered" to FCI Elkton on December 3, 1997 to begin serving his federal sentence. (Compl. at 3.) At the time of his initial incarceration, he was issued a standard pair of hard soled shoes. He asked if he could have soft soled shoes and was told that no other shoes were available to inmates.

In April 1998, Mr. Taylor was transferred to the FCI Elkton camp and assigned landscaping duties. He claims he began to experience dizziness, back pain, tingling in his limbs, numbness, and pain in his feet. He attributes these symptoms to his hard soled shoes. Mr. Taylor alleges he discovered from other inmates that he could obtain a medical restriction for soft soled shoes and a change of employment duties. He indicates he was given an appointment with the medical department where he met with Ms. Deeds. She allegedly denied his requests. He contends he attended several other sick call visits with similar results. He claims that although prison medical staff have listed his complaint as "flat feet," he believes he suffers from "flexible or hypermobile arches." (Compl. at 7.) He states he did

2

eventually receive custom insoles; however, Mr. Azam told him he would have to pay $40.00 to obtain soft soled shoes. Mr. Taylor was transferred to the Allenwood Federal Correctional Facility ("FCI Allenwood") on April 3, 2001.

During his incarceration at FCI Allenwood, Mr. Taylor continued to be denied soft soled shoes. He claims this decision was due to notations placed in his prison file by FCI Elkton medical personnel. In addition, he contends he acquired a skin irritation which he attributes to exposure to chemicals used to wash pots and pans in the food service facility. He claims that FCI Allenwood would not schedule him to see a podiatrist or a dermatologist.

Mr. Taylor was returned to FCI-Elkton on June 6, 2002. At that time, he reiterated his request for soft soled shoes and medical work restrictions. He also asked to see a podiatrist and a dermatologist. He indicates the requests were denied. He further contends that his custom shoe inserts were confiscated. Mr. Taylor alleges he requested copies of his medical records and found that they had been altered to state that he suffered from flat feet. He claims he repeatedly signed up for sick call to renew his requests for soft soled shoes. His requests were denied. He states he did eventually receive a soft shoe permit; however, it was later confiscated by Unit Manager Chapman and not returned.

Finally, Mr. Taylor claims FCI-Elkton officials retaliated against him. He states he was assigned to work in the prison's UNICOR industry on June 27, 2003. UNICOR employees are required to wear steel toed shoes in the work area. He alleges that these jobs are generally available to the inmates on an elective basis. Mr. Taylor indicates that although he has stated on numerous occasions that he does not wish to work a UNICOR job, he has been assigned to this type of employment.

*Analysis*

A prisoner must allege and show that he has exhausted all available administrative remedies before filing a civil rights action in federal court to challenge the conditions of his confinement. 42 U.S.C. §1997e; Wyatt v. Leonard, 193 F.3d 876, 878 (6th Cir. 1999); Brown v. Toombs, 139 F.3d 1102, 1104 (6th Cir. 1988), cert. denied, 525 U.S. 833 (1998). To establish that he exhausted his remedies prior to filing suit, the prisoner must plead his claims with specificity and show that he has exhausted his administrative remedies with respect to each allegation against each defendant by attaching to the complaint a copy of the applicable administrative dispositions or, in the absence of written documentation, describing with specificity the administrative proceedings and their outcomes. Knuckles-El v. Toombs, 215 F.3d 640, 642 (6th Cir. 2000). The prisoner must exhaust each specific claim against each defendant named in the complaint to satisfy the exhaustion requirement. See Curry v. Scott, 249 F.3d 493, 504-05 (6th Cir. 2001). Moreover, the prisoner must specifically grieve allegations of retaliation or conspiracy against the defendants he names in his complaint. Garrison v. Walters, No. 00-1662, 2001 WL 1006271 (6th Cir. Aug. 24, 2001); Curry, 249 F.3d at 504-05. In the absence of such particularized averments concerning exhaustion, the action must be dismissed. Id.

Title 28 of the Code of Federal Regulations sets forth a four-step grievance procedure for administrative remedies for inmates housed in federal prisons. Under this title, an inmate initiates the grievance procedure by requesting an Informal Resolution from the prison official whose area of responsibility is most related to the grievance. 28 C.F.R. § 542.13. If the inmate is dissatisfied with the informal response, or if there has been no response to the complaint, the inmate may file a BP-9 form with

the institution staff member designated to receive such requests. 28 C.F.R. § 542.14. If this second step does not provide satisfactory results, the inmate may file an appeal on a BP-10 form to the Regional Director. 28 C.F.R. § 542.15. An inmate who is not satisfied with the Regional Director's response may submit an appeal on the appropriate BP-11 form to the General Counsel. 28 C.F.R. § 542.15. The General Counsel's written response to the inmate's appeal is the final decision on the grievance.

There is no indication in the pleading that Mr. Taylor completed the grievance process for each claim against each defendant. He alleges in general terms that he filed a particular grievance form, or attempted to file a grievance form but was prevented from doing so by prison authorities. This information, alone, is insufficient to satisfy the requirements of § 1997e. Mr. Taylor's complaint names twenty-five defendants and includes multiple claims. The complaint does not indicate the factual content of the grievances Mr. Taylor states he filed or the individuals against whom each grievance was asserted. Absent this information, the court cannot determine whether the claim presented in the complaint has been exhausted, or if so, against which of the twenty-five defendants it has been exhausted.

Moreover, the United States Sixth Circuit Court of Appeals recently adopted a "total exhaustion" requirement for prisoner complaints which fall within the parameters of 42 U.S.C. §1997e. See Bey v. Johnson, 407 F.3d 801 (6th Cir. 2005). Under this rule, a complaint containing both exhausted and unexhausted claims must be dismissed in its entirety for failure to exhaust administrative remedies. Bey, 407 F.3d at 806-07. The district court no longer has the option of dismissing just the unexhausted claims and proceeding with the claims that have been submitted through the relevant grievance process. Id. A prisoner whose "mixed" complaint was dismissed may either wait until all of his claims have been exhausted to file his action, or file a new action which contains only the exhausted claims. Id.

5

at 808. Because the court is unable to determine that all of the claims against all of the defendants have been exhausted, the complaint must be dismissed in its entirety without prejudice.

## *Conclusion*

Accordingly, this action is dismissed without prejudice pursuant to 42 U.S.C. § 1997e. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[2]

IT IS SO ORDERED.


Dated: July 8, 2005                     *s/     James S. Gwin*
                                        JAMES S. GWIN
                                        UNITED STATES DISTRICT JUDGE

---

[2]     28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.